UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA,           :
  - v. -                                    :     18 CR 191 (GBD)
DAVID L. GLASS,                             :
       Defendant.                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

                                               GEOFFREY S. BERMAN
                                               United States Attorney for the
                                               Southern District of New York

**JORGE ALMONTE**
Special Assistant United States Attorney

**JACK A. MORGAN**
Special Assistant United States Attorney

     - Of Counsel -

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
**UNITED STATES OF AMERICA,**                 :

  - v. -                             :     18 CR 191 (GBD)

**DAVID L. GLASS,**                           :

       **Defendant.**         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through undersigned counsel, hereby respectfully submits this memorandum in connection with the sentencing of the defendant, David L. Glass, currently scheduled for March 6, 2019. The Government does not take a position with respect to a particular sentence to be imposed and respectfully defers to the Court as to the defendant's proper sentence in light of the Government's prior filings. Instead, the Government's memorandum sets forth its assessment of the nature of the defendant's offense conduct, computes and discusses the applicable advisory sentencing guidelines, and discusses the applicable sentencing factors in light of 18 U.S.C. § 3553(a).

1. **FACTUAL BACKGROUND**[1]

David L. Glass ("Glass" or "the defendant") is an accountant who, beginning in 2009 and continuing through at least March 2012, conspired with Steven M. Etkind ("Etkind"), an attorney,

---

[1] The Government has provided a more extensive recitation of this case's factual posture and the defendant's role in prior submissions to the Court.

to embezzle approximately $3.7 million from two charitable trust private foundations ("the Foundations") and to further hide the fraudulent proceeds from the Internal Revenue Service ("IRS").

Etkind was a New York-licensed attorney and a partner in the law firm of Sadis & Goldberg LLP in Manhattan, where he was the head of the firm's Tax, Trusts, and Estates practice group. As an attorney, Etkind represented a wealthy entrepreneur client who wanted to leave the bulk of his money to charity. Following the client's death in November 2008, Etkind, who was named co-executor of the client's $35 million dollar estate, assisted in creating the Foundations. The Foundations, in accordance with the client's last will and testament, were directed to distribute the net income and principal for exclusively charitable purposes, specifically to 501(c)(3) tax-exempt organizations "whose purpose is to assist and help animals or which are Jewish sponsored organizations or who meaningfully assist and help Jews." Etkind, who also appointed a co-trustee for the Foundations, retained the authority to propose distributions to specific tax-exempt charities, subject to the approval by his co-trustees.

Sometime in 2009, in anticipation of the Foundations being formed and funded, Etkind approached Glass, a former school friend who operated an accounting and bookkeeping practice in New Rochelle, with a proposition. He asked Glass to form a charity, called the United Jewish Education Foundation ("UJEF"), that would receive seemingly legitimate donations from the Foundations and then to transfer the funds for Etkind's personal use. For his role in the scheme, Glass would be compensated.

In May 2009, Etkind assisted Glass in creating UJEF. That same month, with Etkind's assistance, Glass opened a bank account in the name of the United Jewish Education Foundation Trust ("UJEF Trust"), with the initial deposit coming from Etkind's attorney business account.

Following this, in June 2009, Glass and Etkind submitted documentation to the IRS for a 501(c)(3) determination on behalf of UJEF. Such a determination was necessary for the Foundations' co-trustees to authorize any donations proposed by Etkind.

The initial scheme to route the charitable contributions directly from the Foundations to UJEF soon unraveled because of an unforeseen delay in the entity receiving its tax-exempt status. In late 2009, Etkind developed a new scheme. With Glass's assistance, Etkind recruited a third-party 501(c)(3) organization, a Hebrew private day school based in Connecticut ("the Hebrew School"), to serve as a conduit for the supposed charitable donation. In his communications with the Hebrew School Director, Etkind explained that he and Glass were trying to help an entity with a similar mission to that of the Hebrew School, and promised a conditional "donation" to the Hebrew School in exchange for its assistance in getting the bulk of the funds to UJEF.

At Etkind's direction, in November 2009, the Foundations each distributed $1,400,000 to the Hebrew School, under the guise of providing donations to reduce the school's operating deficits and for tuition assistance to families. An additional $900,000 distribution was made to the Hebrew School, at Etkind's direction, through a Jewish Donor Organization, which earlier in October 2009 had received separate donations of $550,000 from each of the Foundations. In total, the Hebrew School received $3,700,000. Relying upon Etkind's misrepresentations as to the intended use of the funds, the Hebrew School Director, in turn, distributed $3,502,500 to UJEF. These funds were deposited into the UJEF Trust account which Glass exclusively controlled.

Etkind ultimately directed that Glass re-direct the funds received by UJEF for Etkind's own personal benefit, including for the purchase of a 6,300-square foot luxury beach house with a swimming pool located at 1060 Deerfield Road, Watermill, Town of Southampton, New York ("the Southampton property"), for which he paid $3,025,000 plus costs. For his part, Glass directly

benefited from the scheme, receiving approximately $295,000, a portion of which he did not report as income to the IRS. This includes $60,000 that Glass received from the Hebrew School as a "finder's fee," and an additional $235,000 that he received directly from Etkind, via checks from Etkind's law practice account in 2009 and two checks from Etkind's personal account in 2010 and 2011.

To hide their fraudulent scheme, Etkind and Glass submitted false private foundation tax returns to the IRS, and Etkind also submitted false personal income tax returns to the IRS. Etkind and Glass also provided false and misleading information to an IRS Revenue Agent during the course of a subsequent audit of UJEF in early 2012.

In total, the criminal scheme resulted in $1,222,843 in total tax loss. Of this, Glass personally owes $14,594 in back taxes, and Etkind owes $1,208,245.

## II. SENTENCING CONSIDERATIONS

### A. Statutory Maximum Sentence

On March 3, 2018, Glass waived Indictment and pled guilty to a two-count Information, charging him in Count One with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and in Count Two with corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). Glass agreed as part of his plea agreement to pay restitution to the IRS, "in no case less than $14,598." Count One carries a maximum sentence of 5 years' imprisonment, a maximum term of 3 years' supervised release, a maximum fine, pursuant to 18 U.S.C. § 3571(d), of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to the United States, and a mandatory $100 special assessment. Count Two carries a maximum sentence of 3 years' imprisonment, a maximum term of 1 year of supervised release, a maximum fine, pursuant to 18

U.S.C. § 3571(d), of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to the United States, and a mandatory $100 special assessment. The total maximum sentence of incarceration on Counts One and Two is eight years.

    B.    <u>United States Sentencing Guidelines</u>

In formulating an appropriate sentence to address the defendant's violation of the law, the Court must first turn to the United States Sentencing Guidelines. Although application of the Sentencing Guidelines is no longer mandatory, <u>see</u> <u>United States v. Booker</u>, 543 U.S. 220, 245 (2005), the Guidelines still play a "central role" in the sentencing decision, <u>United States v. Molina-Martinez</u>, 136 S. Ct. 1338, 1345 (2016). The Guidelines "serve as the starting point for the district court's decision and anchor the court's discretion in selecting an appropriate sentence." <u>Id.</u> at 1349. In other words, the applicable Guidelines range "will be a benchmark or point of reference or departure when considering a particular sentence to impose." <u>United States v. Rubenstein</u>, 403 F.3d 93, 98-99 (2d Cir. 2005). In most instances, "the Guidelines are not only the starting point . . . but also the lodestar." <u>Molina-Martinez</u>, 136 S. Ct. at 1346.

    1.    *Base Offense Level*

The guideline for the violation of 18 U.S.C. § 371 here is U.S.S.G. § 2T1.9, which in turn makes reference that the offense level should be determined from U.S.S.G. § 2T1.1. Similarly, the guideline for the violation of 26 U.S.C. § 7212(a) here is U.S.S.G. § 2T1.1. Pursuant to U.S.S.G. § 3D1.2, all counts involving the same victim and two or more same acts or transactions connected by a common criminal objective, and when the offense level is determined largely on the basis of the total amount of harm or loss, are grouped together into a single group. <u>See</u> Presentence Investigation Report ("PSR") ¶ 30 (<u>citing</u> U.S.S.G. § 3D1.2). Because the tax loss in this case is $1,222,843, the base offense level offense is 20 pursuant to U.S.S.G. §§ 2T1.1(a) and

2T4.1(H).  See PSR ¶ 31.  Both the Government and the United States Probation Office agree with this calculation.

This figure, however, is disputed by defense counsel, who argues with respect to the conspiracy charge, under 18 U.S.C. § 371, that Section 2X1.1, which determines the base offense level based on the guideline for the substantive offense underlying the conspiracy, should apply. See U.S.S.G. § 2X1.1.  Respectfully, this is a misreading of the guidelines.

The correct section for the conspiracy count is not U.S.S.G. § 2X1.1 but rather Section 2T1.9.  By its very terms, Section 2X1.1 applies to conspiracies broadly that are "not covered by a *specific* offense guideline."  See U.S.S.G. § 2X1.1 (emphasis added).  But as the Application note explains, "certain attempts, conspiracies, and solicitations are expressly covered by other offense guidelines."  U.S.S.G. § 2X1.1.  The Application Note then provides a list of other guidelines that expressly cover specific offenses.  One such guideline is Section 2T1.9, which covers "Conspiracy to Impede, Impair, Obstruct, or Defeat Tax." U.S.S.G. § 2T1.9.  This language directly tracks the charging language in the Information.  The defendant pled guilty to conspiring to "defraud the United States of America and an agency thereof, to wit, the IRS for the purpose of impeding, impairing, obstructing, and defeating . . . the IRS in the ascertainment, computation, assessment, and collection of revenue, to wit, federal income tax."  Doc. 2, Information, pg. 2. Because the defendant pled guilty to an offense covered by a specific guideline, the Court should apply Section 2T1.9 rather Section 2X1.1 in determining his guideline range.

Section 2T1.9 calculates the defendant's base offense level by reference to the guideline that "most closely addressees the harm that would have resulted had the conspirators succeeded." U.S.S.G. § 2T1.9, App. Note 2.  Here, the applicable guideline provision is Section 2T1.1, which covers tax evasion and the submission of false returns.  There is no dispute that the defendant

7

engaged in this conduct. As the defendant acknowledged, "Mr. Glass did . . . briefly conspire with and assist Etkind in Etkind's objective to avoid Etkind's own tax obligations." Def. Sentencing Memo, pg. 5. The only real question appears to be whether this was the heart of the conspirators' conduct.

As detailed above and in the Government's prior submissions, the conspiracy began in 2009 and ran through at least March 2012. The IRS investigation and the conspirators' acts to obstruct the subsequent civil audit of UJEF began only at the tail end of this time period, specifically in January 2012. Prior to this, the defendant's actions were directed at defrauding the Foundations and the IRS, through the creation of nominees, the misrepresentations to third-party 501(c)(3) entities, and the submission of false charitable and personal tax returns, among other acts. Thus, the timeline of the offense and the myriad actions to effectuate the offense, all support that tax evasion was at the core of the conspiracy.

Defense counsel additionally argues that the guideline for obstruction of justice, again under Section 2J1.2, should apply to Glass's efforts to obstruct and impede the due administration of the internal revenue laws, resulting in a lower base-offense level. Again, the Government respectfully disagrees. There is persuasive case law, which the defense fully and rightfully concedes, plainly indicating that Section 2T1.1 is the more appropriate guideline provision where the obstructive conduct has more to do with taxation then obstruction of justice. See United States v. Neilson, 721 F.3d 1185, 1188-89 (10th Cir. 2013) (applying § 2T1.1 for a tax-related conviction under 26 U.S.C. § 7212(a), rather than § 2J1.2); accord United States v. Ballard, 850 F.3d 292,

295-296 (6th Cir. 2017). Such is the case here, and thus, the appropriate guideline provision is again Section 2T1.1, which results in an offense level of 20.[2]

    2.    *Specific Offense Characteristics*

The Probation Office has additionally applied a specific offense characteristic for sophisticated means, including the use of a fictitious charitable organization and shell corporations. See PSR ¶ 32. The defendant has objected to this enhancement, to the extent that it involves his use of Damida, Inc., an entity he utilized for his receipt of the payments derived from this scheme. The Government did not advocate for application of this enhancement, but concedes that the facts in this case, namely the use of shell corporations and charities by the co-conspirators to execute the charged conspiracy, including UJEF, does qualify as sophisticated means. While the Court is not bound by the parties' computation of the sentencing guidelines computations, the Government will not insist on the application of this enhancement at sentencing.

    3.    *Grouping Considerations*

As noted above, Counts One and Two of the Indictment are grouped for guideline computation purposes because they involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan, and are charges for which the offense level is determined largely on the basis of the total amount of harm or loss, in accordance with U.S.S.G. § 3D1.2(b), (d). See PSR ¶ 30.

---

[2] Moreover, even if the defendant were correct and Section 2J1.2 were the applicable guideline, the base offense level would be 14 as the defendant notes, but the offense level would be 19 because the defendant's conduct resulted in a "substantial interference with the administration of justice" [3 levels], and "involved the selection of any essential . . record, document, or tangible object, to destroy or alter [or] was otherwise extensive in scope, planning, or preparation" [2 levels], thereby resulting a specific offense characteristic increase of 5 levels.

4. *Acceptance of Responsibility*

The defendant has demonstrated acceptance of responsibility for his offenses, and is therefore eligible for a two-level downward adjustment in offense level pursuant to U.S.S.G. § 3E1.1(a). Since the offense level before any reduction for acceptance of responsibility is 16 or greater and the defendant timely pleaded guilty, he is eligible for an additional one-level downward adjustment under U.S.S.G. § 3E.1(b). After applying a three-level reduction for acceptance of responsibility, the defendant's total offense level is 19.

5. *Minimal Participant Role*

Defense counsel further argues that Glass's offense level should be reduced, alleging he was a "minimal participant." See Def. Sentencing Memo, pg. 8. The Government and the Probation Office both disagree. See PSR, pg. 22. This was not a sprawling criminal enterprise but in reality a two-person conspiracy between Etkind and the defendant. The defendant was involved in the formation of the initial fake charity that was intended to subvert funds from the Foundations. After that charity failed to receive its 501(c)(3) designation in time, the defendant actively recruited a legitimate charity that ultimately served as a conduit for the embezzled funds. The defendant opened a bank account in the name of the fake charity; he was involved in the preparation of false charitable tax returns; he ultimately authorized the transfer of the embezzled funds to his co-conspirator; and he then participated in the attempts to cover-up this conduct from the IRS. All of these actions reveal the defendant's knowledge of the scope and structure of the criminal agreement, and his direct involvement at critical intervals in the planning and commission of the offense. Thus, while the Government agrees that the defendant was not the mastermind of the scheme nor its principal beneficiary, he does not qualify as a minimal or minor participant as envisioned by the Guidelines. See U.S.S.G. § 3B1.2.

6. *Criminal History Category*

According to the PSR, the defendant has a criminal history score of zero with corresponding criminal history category of I. See PSR ¶ 44.

7. *Advisory Guideline Range*

As set forth in the sentencing table, a total offense level of 19 with a criminal history category I corresponds to a sentencing range of 30 to 37 months' imprisonment. See PSR ¶ 81. The advisory guidelines fine range is $6,000 to $60,000. See PSR ¶ 91.

C. 18 U.S.C. § 3553(a) Sentencing Factors

In determining the appropriate sentence to be imposed upon the defendant, this Court must also consider all of the sentencing considerations set forth in 18 U.S.C. § 3553(a). The factors relevant here will be examined in detail below and include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need to afford adequate deterrence to criminal conduct; and (5) the guidelines and policy statements issued by the Sentencing Commission, as well as the need to avoid unwarranted sentence disparities. See 18 U.S.C. § 3553(a).

1. *The Nature and Circumstances of the Offenses*

The first factor that the Court must consider is "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). This was a serious and an elaborate scheme. One that resulted in two Foundations being defrauded of approximately $3.7 million and in a loss to the IRS of approximately $1.2 million. The plan involved a sophisticated web of fake charities, nominee trusts, and cutout corporations to hide the scheme, and the use of legitimate charities and religious institutions to cloak the defendant's and his co-conspirator's conduct in seemingly legitimate

transactions.  While the defendant surely benefited much less and is clearly not as culpable as Etkind, the clear mastermind of this elaborate scheme, the harms and consequences of their combined actions are substantial.  At its core, Glass injured the United States' tax system, which relies on its citizens and residents to report timely, completely, and honestly all taxes they owe, from whatever source derived.  The defendant failed to do that here at the expense of the honest and hardworking taxpayers who work and pay their fair share of taxes as the law requires of them.

      2.    *The Defendant's History and Characteristics*

Glass, through his background, higher education, and professional training, had more advantages than most defendants who appear before this Court.  Equally troublesome, Glass used this education, training, and expertise to help effectuate and hide the scheme.  This case involved the use of nominee entities to acquire and then hide assets and wealth, the submission of false charitable and personal tax returns, and concerted efforts to mislead legitimate charitable organization as well as the IRS.  As a certified public accountant, Glass well knew the consequences of his actions and he still carried out the scheme.  Accordingly, while the defendant should receive credit for his close familial relationships and the community work he has performed, his professional and educational background and attainment underscore the severity of his offense.

      3.    *The Seriousness of the Offenses, the Need to Promote Respect for the Law, and Provide Adequate Punishment*

"[T]axes are the lifeblood of government, and their prompt and certain availability an impervious need."  <u>Bull v. United States</u>, 295 U.S. 247, 259 (1935).  The criminal tax laws are designed to protect the integrity of the nation's tax system and to obtain and preserve funds needed for public services.  Criminal tax prosecutions serve not only to punish the violators, but also to promote respect for the laws.  Strong enforcement is necessary to encourage all taxpayers to abide

by the rules and pay their fair share of taxes, as well as to allow the public to have confidence in the fact that everybody plays by the same rules, and that there are consequences for the harm that the IRS and society at-large have suffered as a result of his audacious and calculated fraud scheme.

### 4. *The Need to Afford Adequate Deterrence to Criminal Conduct*

The Sentencing Guidelines clearly articulate that deterrence should be the primary consideration when sentencing defendants for tax crimes. The reasoning is compelling. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from disobeying the tax laws is of the utmost importance when punishing criminal tax violations. See U.S.S.G. § 2T1, introductory cmt. (2016) ("Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines."). Deterrence is particularly crucial in a case such as this where the defendant, a CPA, willfully violated the tax laws.[3] "Defendants in white collar [cases] often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006). It is this type of mentality that is most amenable to deterrence. Absent such deterrence, other successful Americans with the means and opportunity to enrich themselves at the cost of other taxpayers, will cynically conclude that the potential rewards of such criminal activity outweigh the risks of being caught

---

[3] See, e.g., United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." (internal quotation marks and alteration omitted)); United States v. Hauptman, 111 F.3d 48, 52 (7th Cir. 1997) ("[White collar] crime is not as feared as violent crime or drug offenses, but like the latter it requires heavy sentences to deter because it is potentially very lucrative.").

and punished for committing tax fraud. See United States v. Ture, 450 F.3d 352, 358 (8th Cir. 2006).

## III. RESTITUTION

Restitution serves the purpose of making a victim whole by restoring to the victim the value of the losses suffered as a result of the defendant's crimes. See United States v. Newman, 659 F.3d 1235, 1241 (9th Cir. 2011). The parties agree that the correct amount of restitution to be ordered in this case is $14,594, payable to the IRS. The Government will inform the Court of the status of any payments made by the defendant on this agreed-upon restitution prior to sentencing.

## IV. CONCLUSION

The United States relies upon the honesty of taxpayers to fund its functions. The defendant made a deliberate choice to commit a substantial fraud and take advantage of the federal tax system and his expertise for personal profit. He conspired to undermine the U.S. tax authorities, resulting in more than $1.2 million in taxes being defrauded from the IRS. These are serious crimes, but as detailed in the Government's other submissions, they are just a part of the story. By pleading guilty, the defendant accepted responsibility and now faces punishment by this Court. For the aforementioned reasons, the Government respectfully defers to the Court as to the appropriate sentence to be imposed. Whatever sentence imposed by this Court, consistent with the advisory sentencing guidelines and the factors enumerated in 18 U.S.C. § 3553(a), should include a mandatory fee assessment of $200 and an order of restitution payable to the IRS in the amount of $14,594.

Dated:  February 28, 2019                    Respectfully submitted,

                                                        GEOFFREY S. BERMAN  
                                                        United States Attorney  
                                                        Southern District of New York

                                                        ____/s/_____  
                                                        JORGE ALMONTE  
                                                        Special Assistant United States Attorney  
                                                        Assistant Chief, DOJ-Tax Division  
                                                        (202) 305-3676  
                                                        jorge.almonte@usdoj.gov  
                                                        JACK A. MORGAN  
                                                        Special Assistant United States Attorney  
                                                        Trial Attorney, DOJ-Tax Division  
                                                        (202) 353-7580  
                                                        jack.a.morgan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2018 a copy of the foregoing Government's Memorandum in Aid of Sentencing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including:

Elie Honig, Esq.
Rebecca Ryan, Esq.
Lowenstein Sandler LLP
*Counsel for Defendant David L. Glass*

                                                                                   /s/
                                                  JORGE ALMONTE
                                                  Special Assistant United States Attorney
                                                  Assistant Chief, DOJ-Tax Division